Lewis O. YOUNG, Plaintiff,

v.

Fearon H. JENNE, III, Defendant.

Civ. A. No. S84–0344(NG).

United States District Court,
S.D. Mississippi, S.D.

April 16, 1986.

Lewis O. Young, pro se.

William T. Reed, Pascagoula, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

GEX, District Judge.

This matter is before the Court on the Motion of Defendant to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant has filed affidavits and exhibits in support of the instant Motion, and so the Court must treat the Motion as one for summary judgment under Rule 56.

While incarcerated at the Jackson County Adult Detention Center, Plaintiff filed a Complaint in April of 1984 against Defendant Jenne who, at all times material to this cause, was administrator of the Center. Plaintiff complains of having been confined to the maximum security section of the Center following a classification hearing held on a Rules Violation Report written on the Plaintiff on January 29, 1984. Plaintiff contends that his sole offense was not standing with the other prisoners for head count and that this did not warrant being confined to maximum security. Plaintiff asks for $50,000.00 as compensation for the mental anguish he allegedly suffered as a result of Defendant's actions.

Defendant and Carolyn Ayers, classification officer at the Center, have each filed affidavits in support of Defendant's Motion together with numerous Rules Violation Reports, Offense/Incident Information Reports, Supervisor's Review Forms and Inmate Reclassification Forms relevant to the

**2**

Plaintiff and his grievances presented here. Defendant has also submitted a copy of the Consent Decree entered into pursuant to *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981), and the rules and regulations promulgated thereunder, including the portion which specifically addresses inmate disciplinary procedures. These materials show that Plaintiff was admitted to the Center on January 5, 1984, having been brought back from Parchman. From that time until January 30, 1984, he received eleven (11) written incident reports for his continued violation of the Center's express policies governing inmate behavior. Plaintiff was cited for threatening officers, failing to stand for head count, and destroying county property. Plaintiff was reclassified to "lock down" or maximum security pursuant to Officer Ayers' report dated January 30, 1984, which refers, *inter alia*, to Plaintiff's "belligerent attitude since he returned from Parchman". The report also notes that Plaintiff's complaints of severe headaches (Plaintiff's stated reason for not standing for head count) were not substantiated by the Center's medical department.

Plaintiff was reclassified to "general inmate population" March 1, 1984, but as a result of infractions committed March 2nd through March 5th, a second classification hearing was conducted March 5, 1985. The documented infractions include removing a blade from a razor, threatening the life of Lieutenant Joy Winters, and again refusing to stand for head count. At the hearing on March 5, 1984, Plaintiff, who was reclassified to "maximum security", was reported to be loud, abusive and uncooperative. From March 5, 1984, until May 22, 1984, Young was cited for various incidents of misconduct including flooding his cell block, destroying county property, refusing to return eating utensils to officers, removing blades from razors and threatening officers with bodily harm. Plaintiff remained classified as "maximum security" until he was transferred to Parchman.

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). Decisions by the United States Supreme Court have consistently refused to recognize more than the most basic liberty interest in prisoners. In *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1982) the Court said "[i]t is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence". Moreover, "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security". *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).

The Court is of the opinion that the process afforded Plaintiff satisfied the minimum requirements of the Due Process Clause of the Fourteenth Amendment. In *Hewitt, supra* 459 U.S. at 474, 103 S.Ct. at 873, the Court deemed this to be "only an informal nonadversary review of evidence ... in order to confine an inmate feared to be a threat to institutional security to administrative segregation". Here, Plaintiff was duly notified of the disciplinary proceedings which resulted in his reclassification. He was allowed a fair opportunity to present his views to Officer Ayers. The Court is satisfied that the classification hearings were conducted in compliance with the Center's published rules and regulations governing discipline of inmates. Although the Court need not address it[1], Officer Ayers' decision to reclassify Plaintiff to "maximum security", given Plaintiff's record of uncooperative, contumacious conduct, was clearly justified.

On April 22, 1985, Plaintiff filed a Motion to Amend to which he attached a proposed amended complaint. The proposed amended complaint effectively alleges a deprivation and violation of Plaintiff's

---

**1.** "The constitution demands due process, not error-free decision-making...." *McCrae v.*

*Hankins*, 720 F.2d 863, 868 (5th Cir.1983)

constitutional rights while incarcerated at the Center but makes no mention of any of the events surrounding his reclassification to "maximum security" as expressed in his initial complaint. The rights Plaintiff refers to include, "(1) visition [sic], (2) recreation, (3) education, (4) mailing, (5) access to legal library, (6) medical facilities, (7) telephone, (8) beds and housing, and (9) personal hygiene [sic]".

The Court is mindful of the liberality accorded to the pleadings of *pro se* petitioners in *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) and the rule that a *pro se* prisoner complaint is to be liberally construed in favor of the Plaintiff. *Miller v. Stanmore*, 636 F.2d 986, 992 (5th Cir.1981). The Court is equally aware, however, that it is well within its discretion to deny an amended complaint submitted a full year after the filing of the original complaint, which asserts new allegations not germane to the original action, and which, if allowed, would cause prejudice to the non-moving party or undue delay in the proceedings. *See, Daly v. Sprague*, 675 F.2d 716 (5th Cir.1982), cert. den'd 460 U.S. 1047, 103 S.Ct. 1448, 75 L.Ed.2d 802 (1983); and *Gulf Oil Trading Co. v. M/V Caribe Mar*, 757 F.2d 743 (5th Cir.1985). The Court is of the opinion that the proposed amended complaint presents just such a scenario, and so determines that the Motion to Amend should be denied[2]. It is, therefore,

ORDERED that Plaintiff's Motion to Amend be, and the same is hereby, denied. It is further,

ORDERED, that Defendant's Motion to Dismiss be, and the same is hereby, sustained.

A separate Judgment will be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.

---

2. The Court's decision to deny Plaintiff's Motion to Amend does not prevent Plaintiff from filing a separate complaint containing the same allegations included in his proposed amended complaint. The Court's denial of the Motion merely reflects its determination that it would be improper to raise those allegations in this action.