**Mahfouz El SHAHAWY, M.D., etc., et al., Plaintiffs-Appellants,**

v.

**William T. HARRISON, Jr., etc., et al., Defendants-Appellees.**

No. 83–3650.

United States Court of Appeals, Eleventh Circuit.

Dec. 16, 1985.

Guy B. Bailey, Jr., Jesse C. Jones, Miami, Fla., for Shahawy.

Mary A. Lau, Tampa, Fla., James H. Burgess, Jr., Sarasota, Fla., for Floyd, Rand, French, Tollerton & The Sarasota County Public Hosp. Bd., Harrison, Mathews, Bowman.

Frank E. Strelec, Claire L. Hamner, Sarasota, Fla., Robert R. Feagin, Tallahassee, Fla., for Rushton, Carlson, Page, Sarkis, Silverstein, Stutz, Natarjan, Bowman, Mathews, Meyers, Delmastro, Chidsey & Fieegler.

Before HATCHETT and CLARK, Circuit Judges, and STAFFORD *, Chief District Judge.

ON PETITION FOR REHEARING

HATCHETT, Circuit Judge:

This appeal is from the district court's dismissal of a lawsuit brought by a physician who was denied the privilege of performing a certain medical procedure at a hospital. The district court found the physician's complaint insufficient to sustain a lawsuit based on violation of the anti-trust, civil rights, and federal and state contract laws. We reverse in part and affirm in part.[1]

FACTS

Appellant, Mahfouz El Shahawy and his medical association, Mahfouz El Shahawy,

---

* Honorable William H. Stafford, Jr., Chief U.S. District Judge for the Northern District of Florida, sitting by designation.

1. The panel has reconsidered this case. Our opinion published in the advance sheet at 755 F.2d 1432 (11th Cir. March 22, 1985), is withdrawn.

M.D., P.A., (Shahawy), are on the staff of the Sarasota Memorial Hospital, a public hospital in Florida. A hospital committee denied Shahawy the privilege of conducting cardiac catheterizations in the hospital's laboratory. Shahawy filed a complaint in the district court, Middle District of Florida, alleging unlawful conduct against several of the appellees.[2] Shahawy alleged that appellees committed antitrust violations, deprivation of his civil rights, deprivation of due process of law, and engaged in illegal racketeering. The district court dismissed Shahawy's original and amended complaints for failure to state a federal claim for relief.[3]

### ISSUES

On appeal, Shahawy raises three issues: (1) the district court's dismissal of his Sherman Act claims for failure to satisfy the Act's jurisdiction; (2) the district court's finding that Shahawy's complaint did not allege either the existence of a protected federal interest or state action for relief under 42 U.S.C.A. §§ 1983 and 1985; and (3) the district court's abuse of its discretion in dismissing his pendent claims.

### I.

#### A. Sherman Act Jurisdiction

Shahawy contends that the district court erred in holding that his amended complaint did not satisfy the jurisdictional requirements of the Sherman Act.[4]

In *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), the Supreme

---

**2.** The defendants were: general counsel of the health board, committee lawyers, members of the medical staff, section chairmen, executive committee members, the director and members of the cath lab standards committee, chairman and members of the hospital board, and the executive director of the hospital.

**3.** In his 12-count amended complaint, Shahawy sets out the alleged unlawful conduct of appellees for which he seeks damages and injunctive relief. Count I alleges that appellees engaged in a group boycott of Shahawy's services through denial of his cardiac catheterization privilege in violation of the Sherman Act, 15 U.S.C.A. § 1 (Supp.1984). Count II alleges that appellees conspired to maintain a monopoly over cardiac catheterizations performed within the relevant geographic market in violation of the Sherman Act, 15 U.S.C.A. § 2 (Supp.1984). Count III alleges that appellees' conduct was a restraint of trade and a monopoly in violation of the Florida antitrust statute, Fla.Stat.Ann. §§ 542.18 and 542.19 (Supp.1984). Count IV alleges that appellees deprived Shahawy of his federal civil rights and are, therefore, liable under 42 U.S.C.A. § 1983 (1981). Count V alleges that appellees conspired to deprive Shahawy of his civil rights and are liable under 42 U.S.C.A. § 1985 (1981). Count VI alleges that appellees engaged in racketeering in violation of 18 U.S.C.A. §§ 1341 (Supp.1984) and 1343 (1966), and 18 U.S.C.A. §§ 1962(c) and 1964 (Supp.1984). Count VII alleges that appellees violated the Florida racketeering statutes, Fla.Stat.Ann. §§ 895.03(3) and 895.03(4) (Supp.1984). Count VIII alleges that appellees have deprived Shahawy of a property right in violation of Fla.Stat.

§ 812.035(7) (Supp.1984). Count IX alleges tortious interference with reasonable business expectancy. Count X alleges promissory estoppel. Count XI alleges defamation. Count XII alleges that Shahawy has suffered irreparable injury and seeks preliminary and permanent injunctive relief.

**4.** Section 1 and 2 of the Sherman Act provide:
§ 1, Trusts, etc., in restraint of trade illegal; penalty
Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.
§ 2, Monopolizing trade a felony; penalty
Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

Court established the jurisdictional requirements of the Sherman Act. In *McLain,* a class of individuals who employed real estate brokers in the purchase and sale of residential property in the Greater New Orleans area, sued real estate trade associations, real estate firms, and a class of realtors for engaging in restraint of trade in violation of section 1 of the Sherman Act, 15 U.S.C.A. § 1 (Supp.1984). Plaintiffs claimed to have satisfied the jurisdictional requirements of the Act by the allegations in their complaint and by trial testimony that the financing of residential property in the Greater New Orleans area included out-of-state investors, multi-state lending institutions, interstate secondary mortgage market activity, and title insurance furnished by interstate corporations. In holding that such commercial activity satisfied the Sherman Act's jurisdictional requirements, the Supreme Court ruled that the Act requires the demonstration of a "substantial effect on interstate commerce generated by respondents' brokerage activity." *McLain,* 444 U.S. at 242, 100 S.Ct. at 509. Further, the court ruled that the Sherman Act does not require that the "unlawful conduct itself [have] an effect on interstate commerce," or that a plaintiff must quantify the adverse impact of a defendant's anti-competitive activities for jurisdictional purposes. *McLain,* 444 U.S. at 243, 100 S.Ct. at 509. To invoke the jurisdiction of the Sherman Act, therefore, *McLain* mandates that a plaintiff show (1) that the local activity has a (2) substantial effect on (3) interstate commerce. *Lease Lights v. Public Service Company of Oklahoma,* 701 F.2d 794, 798–99 (10th Cir. 1983); *Turf Paradise, Inc. v. Arizona Downs,* 670 F.2d 813, 818–19 (9th Cir.1982).

The district court dismissed Shahawy's amended complaint based on its interpretation of *Construction Aggregate Transport v. Florida Rock Industries, Inc.,* 710 F.2d 752 (11th Cir.1983) (*CAT*), which held that the test of Sherman Act jurisdictional sufficiency is whether the defendant's general business activity or the plaintiff's general business activity has a substantial effect on interstate commerce. 710 F.2d at 767–69.

In considering Shahawy's amended complaint, the district court found in the *CAT* decision authority for its view that Sherman Act jurisdiction requires a nexus between a defendant's anti-competitive activity and a plaintiff's interstate commerce activity. The district court quoted a portion of *CAT*'s footnote 31:

> Thus, when determining whether interstate commerce is affected by an alleged violation courts will often examine both the defendant's relationship with interstate markets and the plaintiff's. *Such an approach makes good sense because injury to the plaintiff may result directly in injury to the market.* In our view, therefore, the proper inquiry is one which focuses on the interstate markets involved in both the defendant's and the plaintiff's operations, and seeks to determine whether the defendant's business conduct will likely make its presence known in those markets. 710 F.2d at 767 n. 31 (citations omitted). [Emphasis added by court.]

Based on this language, the district court concluded:

> The above-quoted language suggests that there must be some relationship between the allegedly restrictive conduct of the defendant and the injury to the relevant interstate market. This threshold jurisdictional test can be met by examining either the defendant's activities that have 'an immediate impact on the particular goods or services involved' or the 'injury to the plaintiff [that] may result directly in injury to the market.'

The district court held that Shahawy "must allege facts sufficient to show that if indeed the defendants conspired to deny him the use of the cardiac catheterization laboratory, that conduct had some not insubstantial effect upon the plaintiff's activities as they affect interstate commerce."

### B. *McLain* Jurisdictional Standard

Much dispute exists in the federal circuits over the content of the elements of the Sherman Act jurisdictional inquiry. The central dispute is whether defendant's

general business activity or its specific anti-competitive conduct is to be measured for substantial effect on interstate commerce.

The controversy over the necessary allegations of defendant's conduct derives from the following passage in *McLain:*

> To establish the jurisdictional element of a Sherman Act violation it would be sufficient for petitioners to demonstrate a substantial effect on interstate commerce generated by respondents' brokerage activity. Petitioners need not make the more *particularized showing* of an effect on interstate commerce caused by the alleged conspiracy to fix commission rates, or by those other aspects of respondents' activity that are alleged to be unlawful.

*McLain,* 444 U.S. at 242–43, 100 S.Ct. at 509 (emphasis added). In *Crane v. Intermountain Health Care, Inc.,* 637 F.2d 715 (10th Cir.1980), the Tenth Circuit interpreted this passage:

> In context ... the court was referring to the *challenged* activities, not the brokers' overall business, by its reference to 'respondents' brokerage activities' ....
> By stating that plaintiff 'need not make the more particularized showing of an effect on interstate commerce caused by the conspiracy ... or other aspects of respondents' activity that are alleged to be unlawful,' the court was only confirming the principle set forth in *Hospital Building* [*Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976)], *Burke* [*v. Ford,* 389 U.S. 320, 88 S.Ct. 443, 19 L.Ed.2d 554 (1967)], and *Goldfarb* [*v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975)] that for jurisdictional purposes a plaintiff need not 'make the ... particularized showing.' 444 U.S. at

242, 100 S.Ct. at 509. In other words, an elaborate analysis of interstate impact is not necessary at the jurisdictional stage, only an allegation showing a logical connection as a matter of practical economics between the unlawful conduct and interstate commerce. The emphasis was intended to be that a 'particularized' showing is not necessary, not that a showing of a nexus between unlawful conduct and effect is unnecessary.

*Crane,* 637 F.2d at 723; *Malini, M.D. v. Singleton & Associates,* 516 F.Supp. 440, 442 (S.D.Tex.1981). We disagree.

■ A determination of whose interstate activity is relevant for jurisdictional purposes under the Sherman Act cannot be made without understanding the basic objectives of the act. It is to be remembered that the "vital thing is the effect on commerce, not the precise point at which the restraint occurs." *Mandeville Island Farms v. American Crystal Sugar Co.,* 334 U.S. 219, 238, 68 S.Ct. 996, 1007, 92 L.Ed. 1328 (1948), *cited in* P. Areeda, Antitrust Analysis, 131 (3rd ed. 1981). "What is relevant is the presence in interstate commerce of transactions that, as a result of the anti-competitive conduct, are substantially 'different' from the transactions that would otherwise have occurred." *Cardio-Medical Association v. Crozer-Chester Medical Center,* 721 F.2d 68, 74 (3d Cir.1983) (reversing the district court's jurisdictional requirement of a net effect on interstate commerce). Understanding that "the antitrust laws are concerned primarily with the integrity of interstate markets," we hold that in this circuit Sherman Act jurisdiction requires a focus on the interstate markets involved in the defendant's business activities. *CAT,* 710 F.2d at 767 n. 31.[5] *See also Western Waste Ser-*

---

**5.** It is clear that the *CAT* court adhered to the literal jurisdictional requirements of *McLain* by first stating that:

> The starting place for analysis, therefore, is the relationship between the defendant's business and interstate markets, in particular the effect the defendant's business will have on those markets. Most often this effect will be readily apparent because the defendant en-

gages directly in interstate commerce, and any restrictive conduct has an immediate impact on the particular goods or services involved.

*CAT,* 710 F.2d at 767 n. 31 (citation omitted). Though the court eventually concludes that both the plaintiff's and defendant's operations are relevant in considering the effect on interstate commerce of defendant's conduct, a complete

*vice Systems v. Universal Waste Control,* 616 F.2d 1094, 1097 (9th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980); *Cardio-Medical Associates v. Crozer-Chester Medical Center,* 721 F.2d 68, 74 (3d Cir.1983).

■ No dispute exists as to the quantity of impact on interstate commerce. It is accepted in all circuits that a plaintiff must show a substantial or not insubstantial effect on interstate commerce. That those two phrasings are interchangeable is confirmed by their synonymous use in *McLain.* 444 U.S. at 242, 246, 100 S.Ct. at 509, 511. We hold, therefore, that pleading Sherman Act jurisdiction requires allegations that defendant's business activities

have a substantial impact on interstate commerce.

■ In this case, Shahawy has sufficiently alleged that the respondents are substantially involved in interstate commerce, and has gone beyond the requirements of *McLain* by alleging the manner in which the unlawful conduct itself has affected interstate commerce.[6] It was error, therefore, for the district court to dismiss Shahawy's complaint for lack of subject matter jurisdiction.

## II.

### A. Civil Rights Violations

■ Shahawy's complaint also alleges that appellees, particularly the Sarasota

---

reading of note 31 clearly indicates that this approach is to be used as an additional tool for gaining jurisdiction where an analysis of defendant's business alone does not produce the requisite effect on interstate commerce. For instance, before suggesting this approach, the *CAT* court states: "Occasionally the relationship between the defendant and interstate commerce becomes apparent only by examining the relationship between the defendant and other businesses." *CAT,* 710 F.2d at 767 n. 31.

**6.** Petitioners' amended complaint states:

The Defendant physicians treat a substantial number of patients from out-of-state, receive a substantial portion of their revenues from out-of-state private and public insurance entities, and purchase substantial amounts of medical equipment and supplies from out-of-state. Their activities substantially affect interstate commerce.

. . . .

The Plaintiffs provide medical services to patients, a substantial number and proportion of whom travel to Sarasota from other states. The Plaintiffs receive a substantial amount and portion of their revenues from out-of-state insurance companies and from Washington, D.C., in the form of Medicare and Medicaid payments. The Plaintiffs purchase large amount and proportion of their medicines and supplies from out-of-state.

A substantial number of Dr. El Shahawy's patients, and of the patients of Dr. El Shahawy's competitors, reside out-of-state for most of the year, and travel to Sarasota for the winter. A disproportionate number of these patients are elderly and thus more susceptible to coronary, and require cardiac care in Florida [sic]. Persons from out-of-state requiring health care seek Dr. El Shahawy out

because of his demonstrated abilities. Because of the Defendants' wrongful acts, however, he is unable to provide full service to those patients requiring left-heart catheterization, which has reduced the number of patients coming in to Florida for health care.

As a direct result of his being excluded from the cardiac cath lab, Dr. El Shahawy must refer his patients in need of catheterization to a physician enjoying cath lab privileges, and is denied the opportunity to receive referrals from other physicians for catheterizations. Additionally, Dr. El Shahawy has been impaired in his ability to attract new patients and to keep existing patients, even those not in need of catheterization, because his being excluded from the cath lab prevents him from offering a full range of service in cardiology (i.e., including catheterization). . . .

A major portion of Plaintiffs' revenues come from private, out-of-state insurance companies and from the federal government in Washington, D.C. As a result of the Defendants' wrongful acts, Dr. El Shahawy has suffered a substantial loss in the number of patients he treats and has been prevented from performing any left-heart catheterizations. As a direct result, Plaintiffs have suffered a substantial loss of revenues from out-of-state, which substantially affects interstate commerce.

Plaintiffs' practice requires the purchase and use of substantial amounts of medical equipment [sic] and supplies from out-of-state. The loss of patients and revenues as alleged above has substantially reduced and curtailed the Plaintiffs' expenditures and anticipated expenditures for medical equipment and supplies from out-of-state, which substantially affects interstate commerce.

Petitioners' Amended Complaint at 36–38.

County Public Hospital Board, violated his due process rights made actionable pursuant to 42 U.S.C.A. §§ 1983 and 1985.[7] The district court dismissed the section 1983 claim because it found no state action, no protected property or liberty interest, nor the denial of a right to a hearing. The district court also dismissed the section 1985 claim because Shahawy's complaint did not allege any discriminatory animus as required to support this claim.

### 1. Property Interest

In order to have a property interest, as the Supreme Court found:

A person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

. . . .

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure a certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1971). The crucial question is whether Shahawy's "claim of entitlement" is so legitimate "that the Constitution, rather than the political branches, must define the procedure attending its removal." *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 796, 100 S.Ct. 2467, 2481, 65 L.Ed.2d 506 (1980) (Blackmun, J., concurring) (citing *Roth,* 408 U.S. at 578, 92 S.Ct. at 2709). Such a legitimate claim can arise from "mutually explicit understandings." *Perry v. Sindermann,* 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972). To date, the Supreme Court has held that mutually explicit understandings can be proved through either the existence of an implied contract or through the existence of "industrial common law." *See Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981); *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

Shahawy attempts to show a legitimate claim of entitlement by arguing that his property and liberty interests in the privilege of cardiac catheterization have been

---

**7.** 42 U.S.C.A. § 1983 (1981) provides:
Civil action for deprivation of rights
  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
42 U.S.C.A. § 1985 (1981) provides in relevant part:
  (3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or

for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for president or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one of the conspirators R.S. § 1980.

established by Florida law.[8] *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. These Florida authorities do not go as far as Shahawy claims. Indeed, the cases cited relate to the termination of medical *staff* privileges, which are not involved in this case. Where termination of staff privileges has successfully invoked due process protection, the predicate has been the existence of an implied contract, or the existence of such severe injury to the plaintiff that he would be unable to practice in that area. *Northeast Georgia Radiological Associates v. Tidwell*, 670 F.2d 507, 510–11 (5th Cir. Unit B 1982). *Christhilf v. Annapolis Emergency Hospital Association*, 496 F.2d 174, 178 (4th Cir.1974). Shahawy does not allege injury to a contract right nor an inability to practice medicine without the cardiac catheterization privileges.

In *Daly v. Sprague*, 675 F.2d 716, 727 (5th Cir.1982), where a tenured medical professor lost his clinical privileges, removing his name from the list of faculty members who could see new patients at the center, a case similar to our own, the Fifth Circuit rejected the doctor's claim that he had a protected property interest in those privileges. The *Daly* court noted:

> Daley provides no facts to show that his clinical privileges would be analogous to medical staff privileges, that there was any explicit or implicit written or oral agreement or understanding which created an entitlement to these privileges, or that the removal of his clinical privileges actually totally foreclosed his ability to practice. We do not intimate that clinical privileges could not rise to the level of a constitutionally protected property interest; we only say that, in this case, Daley did not meet his burden of presenting facts to show that a property interest existed.

*Daly*, 675 F.2d at 727.

Additionally, under Florida law, a physician's use of a public hospital is a privilege rather than a right. *Bryant v. City of Lakeland*, 158 Fla. 151, 28 So.2d 106 (1946); *Mizell v. North Broward Hospital District*, 175 So.2d 583 (Fla.Dist.Ct.App. 1965). *See also Buckner v. Lower Florida Keys Hospital District*, 403 So.2d 1025 (Fla.Dist.Ct.App.1981). Shahawy has not demonstrated that a mutually explicit understanding existed resulting in his entitlement to the cardiologic privileges denied him. He cites no implied agreement nor any common practice relating to those privileges. *See Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Accordingly, we hold that Shahawy has shown no property interest in the questioned cardiological privileges.

### 2. Liberty Interest

■ The district court found that Shahawy did not show he was "stigmatized" in connection with a denial of a right or status previously recognized under state law as required by *Moore v. Otero*, 557 F.2d 435, 437 (5th Cir.1977). Accordingly, the court held that Shahawy's complaint did not allege a protectible liberty interest.

In *Moore*, a police officer brought suit contending that his transfer from corporal to police patrolman deprived him of liberty and property interests. The former Fifth Circuit denied relief, establishing requirements for the showing of a protected liberty interest.

In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court ruled that defamation by a state official alone did not deprive an individual of a liberty interest protected under the due process clause of the fourteenth amendment so as to give rise to a 42 U.S.C. § 1983 action. *To establish a liberty interest sufficient to implicate fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law.*

**8.** Shahawy cites to Fla.Stat.Ann. § 395.0115 (former § 395.065) (Supp.1984); *Palm Beach-Martin County Medical Center, Inc. v. Panaro*, 431 So.2d 1023 (Fla.Dist.Ct.App.1983); *Carida v.*

*Holy Cross Hospital, Inc.*, 427 So.2d 803 (Fla. Dist.Ct.App.1983); *Margolin v. Morton F Plant Hospital Association*, 348 So.2d 57 (Fla.Dist.Ct. App.1977).

*See Paul, supra,* at 711–12, 96 S.Ct. 1155 (at 1165).

*Moore,* 557 F.2d at 437 (emphasis added). Even assuming that Shahawy's deprivation of cardiac catheterization privileges stigmatized him, his retention of full staff privileges at the Sarasota hospital "absent any showing that he had an entitlement to the [cardiac catheterization] privileges negates his claim that he was denied 'liberty.' " *Daly,* 675 F.2d at 728. Indeed, Shahawy's loss of cardiac catheterization privileges, which he never had, is similar to the reduction of the policeman from the position of corporal to patrolman, in *Moore;* neither suffered a loss of employment. Such deprivation "does not provide the additional loss of a tangible interest necessary to give rise to a liberty interest meriting protection under the due process clause of the fourteenth amendment." *Moore,* 557 F.2d at 438. Accordingly, we hold that Shahawy's complaint did not aver sufficient facts to implicate the existence of a liberty interest.

Shahawy's civil rights claims were properly dismissed because his complaint did not demonstrate the existence of a protected property or liberty interest.

### B. RICO Claims

Shahawy also attempts to state a claim against appellees under the federal RICO Act, Title 18 U.S.C.A. §§ 1961–1968 (West Supp.1984). Shahawy contends that appellees have engaged in a pattern of racketeering activity in the conduct of hospital affairs. We find the RICO allegations to be without merit, and therefore, they were properly dismissed by the district court.

### C. Pendent Claims

■ Shahawy alleges a multitude of state law claims.[9] For a federal court to exercise "pendent jurisdiction" over state law claims, "the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a 'common nucleus of operative fact.' " *L.A. Draper and Son v. Wheelab-*

*rator-Frye, Inc.,* 735 F.2d 414 (11th Cir. 1984); *Jackson v. Stinchcomb,* 635 F.2d 462, 470 (5th Cir.1981). The exercise of this jurisdiction is discretionary. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son,* 735 F.2d at 428. *See Ray v. Tennessee Valley Authority,* 677 F.2d 818, 825 (11th Cir.), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983); *Joyner v. Diamond M Drilling Co.,* 677 F.2d 1035, 1042 (5th Cir.1982). If no state forum exists at the time of dismissal of the pendent claims, then such dismissal would be error. *L.A. Draper and Son,* 735 F.2d at 428; *Ransom v. S & S Food Center, Inc.,* 700 F.2d 670, 678 (11th Cir. 1983); *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982). The district court's decision to dismiss the pendent claims is to be judged on an abuse of discretion standard. *L.A. Draper and Son,* 735 F.2d at 420.

■ The district court properly dismissed Shahawy's pendent claims as a result of its dismissal of all of Shahawy's federal claims. This case is not one in which dismissal of pendent claims would force Shahawy to suffer the bar of state statutes of limitations as in *Quality Foods de Centro America v. Latin American Agribusiness Development Corp.,* 711 F.2d 989, 990–91 (11th Cir.1983). Shahawy continues to have the Florida courts open to him. *E.g., El Shahawy v. Sarasota County Public Hospital Board,* 426 So.2d 32 (Fla.Dist.Ct.App.1982); *Sarasota County Public Hospital Board v. Shahawy,* 408 So.2d 644 (Fla.Dist.Ct.App.1981). We hold, therefore, that the district court did not abuse its discretion in dismissing the pendent claims.

### CONCLUSION

We hold, therefore, that (1) Shahawy's amended complaint sufficiently invoked the

---

**9.** These claims included violation of the Florida RICO act, Florida Civil Rights Act, tortious in-

terference with reasonable business expectancies, promissory estoppel, and defamation.

subject matter jurisdiction of the federal court so as to survive a motion to dismiss his antitrust claims, but that (2) Shahawy's civil rights, RICO, and pendent claims were properly dismissed by the court.

AFFIRMED in part, REVERSED in part.