James P. **MARTIN**, Plaintiff,

v.

**MEMORIAL HOSPITAL AT GULFPORT, Ray Anderson, Mitchell Salloum, Edward Reid, and Myrtis Franke, Defendants.**

**No. 1:90–CV–491PR.**

United States District Court, S.D. Mississippi, Southern Division.

March 1, 1995.

---

Lucy C. Lacey, Larry D. Moffett, Daniel, Coker, Horton & Bell, Jackson, MS, James A. Keith, Simpson & Keith, Gulfport, MS, for plaintiff James P. Martin.

William M. Rainey, Franke, Rainey & Salloum, Robert C. Galloway, Galloway & Galloway, Gulfport, MS, Neville H. Boschert, Richard G. Cowart, Watkins, Ludlam & Stennis, Jackson, MS, for defendants Memorial Hosp. at Gulfport, Wray Anderson, Mitchell Salloum, Edward Reid.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This matter is before the Court on Motion for Summary Judgment filed on behalf of the Defendants. The Court having reviewed the Motion, the Response, the Briefs of counsel, the authorities cited and being otherwise fully advised in the premises finds as follows, to wit:

## FACTUAL BACKGROUND

This is a complex case involving a fight between two doctors and a hospital. It involves one of the most hotly debated issues of our times, medical costs and competition. The Plaintiff, Dr. James Martin, has sued Memorial Hospital at Gulfport and the members of the Board of Trustees of the hospital contending that they have wrongfully precluded him from providing chronic kidney dialysis treatment in Memorial's Chronic Dialysis Units for the treatment of End Stage Renal Disease, or ESRD. End Stage Renal Disease units or ESRD units are kidney dialysis units where chronic renal dialysis is performed, generally on an out-patient basis. Chronic ESRD units are defined under Mississippi law as "healthcare facilities," Miss.Code Ann. § 41–7–173(h)(v), and as such are regulated by the Mississippi State Department of Health. Chronic ESRD units cannot be established, expanded or relocated unless a certificate of need is obtained from the State Department of Health. *See* Miss. Code Ann. § 41–7–191. Memorial has the certificate of need for chronic ESRD units in Biloxi, Gulfport, and Bay St. Louis, Mississippi.

Memorial Hospital began operation of its chronic ESRD units in 1981 after control of the units were transferred to Memorial by the Singing River Hospital System.[1] After assuming operation of the ESRD units, Memorial entered into a medical director contract with Dr. Douglas Lanier of Gulfport, which it later interpreted to be an exclusive contract.

In 1986, Memorial Hospital assisted Dr. Lanier in recruiting the plaintiff, Dr. Martin, to come to Gulfport to practice with Dr. Lanier. Upon joining practice with Dr. La-

nier, Dr. Martin obtained full medical staff privileges at Memorial Hospital and full access to Memorial's chronic ESRD units. In his practice with Dr. Lanier, Dr. Martin's practice encompassed internal medicine and nephrology including chronic dialysis in Memorial's ESRD units. Nephrology is an internal medicine subspecialty dealing with the kidneys. Chronic renal dialysis falls within the nephrology practice. Dr. Lanier is board certified in nephrology, Dr. Martin is not.

In November 1988, Dr. Lanier terminated Dr. Martin and Dr. Martin began practicing medicine separately from Dr. Lanier. Dr. Martin made no attempt to perform chronic dialysis at any of Memorial's chronic ESRD units until March 1989 when he sought to admit a patient for chronic dialysis to the Gulfport facility. Dr. Martin was not allowed to perform the chronic dialysis because of the contract between Memorial and Dr. Lanier.

The Defendants assert that the medical director contract provided that only Dr. Lanier or someone "in association with him" had the right to perform chronic dialysis in Memorial's ESRD units. The original contract, however, actually provides that either Dr. Lanier or "his designated representative" could perform dialysis in the chronic ESRD units. During the course of this controversy, Dr. Lanier agreed to designate Dr. Martin as his representative, however, the Board of Trustees of the Hospital entered a resolution which they characterized as reaffirming the exclusive medical director contract with Dr. Lanier which limits the use of the facilities to Dr. Lanier or someone "who is in association with Dr. Lanier and who works under the supervision and control of Dr. Lanier and for whose actions Dr. Lanier accepts full responsibility."[2]

1. Effective March 7, 1994, Memorial Hospital consummated an agreement with South Mississippi Kidney Center, Inc., to transfer the chronic ESRD units to South Mississippi Kidney Center, Inc.

2. The resolution sets forth the following benefits alleged to result from the exclusive medical director contract; 1) guaranteed 24 hour dialysis care, 2) more consistent direction of hospital employees involved in the ESRD units, 3) improved monitoring of patient care, 4) standardization of patient education, 5) simplified medi-

cal protocol, 6) improved scheduling economy, 7) increased economic savings through standardization of selection and purchase of ESRD equipment, 8) standardization of physical environments of the ESRD units, 9) participation of medical director in hospital education programs, 10) standardization of policies an procedures of the ESRD units, 11) improved communication with state and federal agencies, 12) improved rapport between the ESRD units and the transplant unit, and 13) enhancement of the hospital's reputation. All of the above is alleged by the defendants to promote better patient care.

After being denied access to the chronic ESRD unit at Gulfport, Dr. Martin wrote Memorial asserting that he had a right to treat patients in Memorial's chronic ESRD units. After receiving Dr. Martin's complaints the Defendants re-evaluated Dr. Lanier's contract and on June 26, 1989, passed the previously mentioned resolution reaffirming the exclusive medical director contract with Dr. Lanier.

Dr. Martin contends that the exclusive contract between Memorial and Dr. Lanier is, 1) the result of a conspiracy in restraint of competition and, 2) infringes on his ability to practice medicine in his subspecialty of nephrology and therefore restricts his staff privileges. The Defendants assert that they have in no way reduced the medical staff privileges that Dr. Martin enjoys at Memorial Hospital. In fact his medical staff privileges were renewed in November 1990 and he currently retains full medical staff privileges at Memorial Hospital.

On September 28, 1990, Dr. Martin filed the instant action contending that Memorial and the Board of Trustees violated federal antitrust laws, deprived him of his constitutional due process rights, violated his rights under color of state law (§ 1983 claims), interfered with his contractual relationships with patients and violated the Mississippi antitrust laws. Defendants assert that Plaintiff's claims fail as a matter of law because they are entitled to immunity from the federal antitrust claims under the state action doctrine; that they are entitled to immunity under the Local Government Antitrust Act, 15 U.S.C. §§ 34, 36; that Dr. Martin has not been deprived of a property right without due process of law; that Defendants have acted in accordance with state law in entering into and maintaining the exclusive contract with Dr. Lanier and that such actions did not violate the Mississippi antitrust laws; and that the Board members are entitled to qualified immunity on Dr. Martin's constitutional due process and state law claims.

Dr. Lanier was initially named as a defendant. Along the way, Dr. Lanier and Dr. Martin entered a settlement agreement. Consequently, only the hospital and its board members remain as defendants.

Memorial Hospital is a community hospital existing under Miss.Code Ann. § 41–13–10 et seq. It is jointly owned by the City of Gulfport and the Gulfport–West Harrison County Hospital District, making it a subdivision of the State of Mississippi or a municipal corporation thereof. *See Enroth v. Memorial Hospital at Gulfport,* 566 So.2d 202, 206 (Miss.1990).

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 222 (5th Cir.1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation,* 812 F.2d 265, 272 (5th Cir.1987).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-

moving party. *McPherson v. Rankin,* 736 F.2d 175, 178 (5th Cir.1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods,* 687 F.2d 117 (5th Cir.1982). Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111, 114 (5th Cir.1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In re Municipal Bond Reporting Antitrust Lit.,* 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods,* 687 F.2d at 119.

### FACTS ASSUMED TRUE

For purposes of this Motion, this Court must assume the facts put forward by Plaintiff as being true and must draw all reasonable inferences favorable to Plaintiff. Accordingly, for purposes of this Motion, this Court assumes that prior to March 1989, Plaintiff was practicing nephrology in Harrison County. At that time the Defendant Memorial operated three ESRD units, two in Harrison County and one in Hancock County. These two units were all of the units that existed in Harrison County.

In March of 1989, the Defendant Memorial stopped letting Dr. Martin use its ESRD units. From a practical point of view, if a nephrologist does not have access to ESRD units, he cannot practice nephrology. Thus, for all practical purposes, Dr. Martin was prevented from practicing nephrology in Harrison County at that time. He perhaps could have practiced in nearby Jackson County, where Dr. Joel Brunt operated two units. At that time Dr. Lanier had an excessive work load. In fact the hospital at that time was actively involved in recruiting two additional nephrologists for Harrison County, and had committed substantial sums of money for that purpose, but only if they were in association with or worked for Dr. Lanier. At least one other nephrologist from Harrison County applied for permission to utilize the ESRD units with his patients and he too was turned down due to the Defendant Memorial's contract with Dr. Lanier. Another physician being recruited by Memorial turned down Memorial's offer because he and Dr. Lanier could not reach an agreement. It is against this backdrop that this Court must reach its conclusion on the Motion for Summary Judgment as to the Sherman Act.

One can make a case, as Plaintiff has done, that the action of the Board of Memorial in construing its contract with Dr. Lanier as an exclusive one was not in the best interest of the patients of Memorial, that such action was "in restraint of trade," gave Dr. Lanier a monopoly and prevented Plaintiff from practicing nephrology in Harrison County. Conversely, one can make a case, as Defendants have done, that such action was appropriate and in the best interest of the patients of Defendant. It is not up to this Court to second guess the decision of Defendants and determine whether this was a good or bad decision. However, this Court does have the responsibility of determining if Plaintiff has brought forward sufficient facts to show that there is "a genuine issue" of material fact as to whether Defendants' action violated the Sherman Anti-trust Act and deprived Plaintiff of due process.

### SHERMAN ANTI–TRUST ACT

Section 1 of the Sherman Act (15 U.S.C. § 1) prohibits "every contract ... in restraint of trade...." Section 2 of the Sherman Act (15 U.S.C. § 2) makes it unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire ... to monopolize" trade or commerce.

The Supreme Court summarized the purpose of the Sherman Act in the case of *Jefferson Parish Hospital District No. 2 v.*

*Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984), wherein it quoted from a previous case by that Court, *Times–Picayune Publishing Co. v. U.S.,* 345 U.S. 594, 605, 73 S.Ct. 872, 97 L.Ed. 1277 (1953), wherein the Court said,

> ' "Basic to the faith that a free economy best promotes the public weal is that goods must stand the cold test of competition; that the public, acting through the market's impersonal judgment, shall allocate the Nation's resources and thus direct the course its economic development will take.' "

For purposes of this Motion, this Court assumes that the exclusive contract in question is an unlawful restraint of trade and contrary to both Sections 1 and 2 of the Sherman Act, unless the action of Defendant is immune from the mandates of the Sherman Anti–Trust Act.

### STATE ACTION IMMUNITY AS TO SHERMAN ACT

■ Under the "state action doctrine", any anti-competitive action which qualifies as "state action" is not subject to the prohibitions of the Sherman Anti–Trust Act. This doctrine was adopted under the principles of federalism and state sovereignty. *See Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). There is "nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." *Id.* 317 U.S. at 350, 351, 63 S.Ct. at 313. "[A]ny action that qualifies as state action is 'ipso facto ... exempted from the operation of the antitrust laws.'" *Hoover v. Ronwin,* 466 U.S. 558, 568, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984).

■ This exemption also applies to local political subdivisions. However, in order for a political subdivision of the state to be entitled to immunity under the state action doctrine, the enabling statutes under which the political subdivision is operating when the alleged anti-competitive conduct occurs, must "clearly articulate and affirmatively express a state policy to displace competition with regulation." *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 44, 105 S.Ct. 1713, 1719, 85 L.Ed.2d 24 (1985).

In order to invoke the state action doctrine or the *"Parker* defense", the Defendants herein must show authority to regulate as well as the authority to suppress competition—the "clear articulation of a state policy to authorize anticompetitive conduct." *Hallie,* 471. U.S. at 40, 105 S.Ct. at 1717. *See also City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991).

■ The Defendants assert that the state's community hospital enabling legislation, Miss.Code Ann. § 41–13–35 (Supp. 1991), authorizes the board of trustees to form contracts.[3] It is pursuant to this authority that the Board argues that their exclusive contract with Dr. Lanier is immunized under the state action doctrine.

■ The Plaintiffs agree that the statute at issue absolutely authorizes the Defendants to form contracts for services or otherwise. However, the Plaintiffs dispute that that authorization contemplates exclusive contracts with anti-competitive effect or sets forth a "clear articulation of a state policy to authorize anti-competitive conduct." As Defendants point out, in order to prove a clear articulation of state policy, it is not necessary to show that a state law specifically authorizes displacement of competition. In order to prove that a state policy to displace competition exists the political subdivision need not " 'be able to point to a specific, detailed

---

**3.** § 41–13–35, in pertinent part, provides;

(5) The power of the board of trustees shall specifically include, but not be limited to, the following authority:

(g) To contract by way of lease, ... or otherwise, with any agency, department or other office of government or any individual, partnership, corporation, owner, other board of trustees, or other health care facility, for the providing of property, equipment or services by or to the community hospital or other entity or regarding any facet of the ... funding or operation of the community hospital or any department or division thereof, or any related activity ... and to terminate said contracts when deemed to be in the best interest of the community hospital.

Miss.Code Ann. § 41–13–35(5)(g).

legislative authorization' in order to assert a successful *Parker* defense to an antitrust suit." *Hallie,* 471 U.S. at 39, 105 S.Ct. at 1716–17; quoting *City of Lafayette, La. v. Louisiana Power & Light Co.,* 435 U.S. 389, 415, 98 S.Ct. 1123, 1138, 55 L.Ed.2d 364 (1978). However, suppression of competition must be the "foreseeable result of what the statute authorizes." *Columbia,* 499 U.S. at 373, 111 S.Ct. at 1350, quoting *Hallie,* 471 U.S. at 42, 105 S.Ct. at 1718.

The Defendants contend that simply because the enabling statute authorizes the board of trustees to contract for services, including those of physicians, then it was entirely foreseeable to the legislature that the hospital could enter into contracts which would limit competition.

Plaintiff contends that by merely allowing the hospitals to enter into contracts as would any private corporation, suppression of competition was not a foreseeable result of the statute. Indeed, the Plaintiff points to the legislative history behind the enabling statute relied on by the defendants which specifically states that its purpose is to "clarify and expand the power of the boards of trustees of community hospitals to operate efficiently [and] to offer competitive health care services...." Chapter 511, Section 1, Laws of 1985.

The U.S. District Court for the Northern District of Mississippi, Chief Judge L.T. Senter, has already analyzed this statute and found it to be neutral toward competition and thus not a clear articulation of a state policy to displace competition. *See Wicker v. Union County General Hospital,* 673 F.Supp. 177 (N.D.Miss.1987). The Defendants argue that the holding in *Wicker* is no longer valid in light of the Supreme Court's decision in *Columbia, supra.* The Plaintiff points out that on the issue of clearly articulated state policy, *Columbia* reaffirmed the necessity of finding such a clearly articulated state policy to displace competition as was developed in *Hallie. Columbia* did not modify the holding of *Hallie* on that issue. *Wicker* relied on *Hallie* in finding the lack of a clearly articulated state policy. This Court agrees with the reasoning of *Wicker* in conjunction with *Hallie* and *Columbia* and finds that the stat-

ute at issue, § 41–13–35, does not clearly articulate a state policy to displace competition with regulation or monopoly public service and neither is the suppression of competition a foreseeable result of what the statute authorizes. Therefore the exclusive contract entered into by the Defendants with Dr. Douglas Lanier is not "state action" and therefore the Defendants are not entitled to state action immunity on Plaintiff's federal anti-trust claims.

Defendants rely heavily on the case of *Todorov v. DCH Healthcare Authority,* 921 F.2d 1438 (11th Cir.1991). The *Todorov* case is easily distinguishable from the case before this Court. The *Todorov* case involved a hospital in Tuscaloosa, Alabama. The State of Alabama had a statute (Ala.Code § 22–21–318) which specifically gave authority to the hospital in question "to exercise all powers granted ... notwithstanding that as a consequence of such exercise of such powers it engages in activities that may be deemed 'anticompetitive' within the contemplation of the anti-trust laws of the state or of the United States...." 921 F.2d at 1461. Mississippi has no such clearly articulated policy allowing its hospitals to enter into actions that otherwise would be contrary to the Sherman Anti–Trust Act. Additionally, the Court in that case said, "Furthermore, the analysis is different in a case involving an exclusive contract between a hospital and the hospital's medical staff ..." *Id.,* fn. 32. Thus, the *Todorov* court itself distinguished that case from the factual situation before this Court.

### LOCAL GOVERNMENT ANTITRUST ACT

15 U.S.C. § 35(a) provides:

No damages, interest on damages, costs, or attorneys fees may be recovered under § 15, 15a or 15c of this title from any local government, or official or employee thereof acting in an official capacity.

▉ It is undisputed that Memorial Hospital, as a community hospital existing and authorized under Miss.Code Ann. § 41–13–10, et seq., is a local government entity under Mississippi law. *See Enroth v. Memo-*

*rial Hospital at Gulfport,* 566 So.2d at 206. Plaintiff admits that Memorial Hospital, as a local government entity, is immune from all antitrust damages claims under the act. *See also Wicker v. Union County General Hospital,* 673 F.Supp. at 186. However, Plaintiff maintains that if he is successful in his claim for injunctive relief under 15 U.S.C. § 26, then he is entitled to also recover the costs and attorneys fees associated with securing such relief against Memorial Hospital.

Plaintiff also contends that the individual board members are not entitled to local government antitrust immunity under § 35(a) because their actions involving the consummation of the exclusive contract with Dr. Lanier were outside the scope of their authority. This same issue was presented to the Court in *Sandcrest Outpatient Services, PA v. Cumberland County Hosp. System, Inc.,* 853 F.2d 1139 (4th Cir.1988), in which that court evaluated the scope of acting in an official capacity and relying upon a Second Circuit case stated, "The Second Circuit based its conclusion on a finding that, in the light of the legislative history, Congress intended that the phrase 'acting in an official capacity' be given broad meaning." (citation omitted) 853 F.2d at 1145. This Court likewise concludes that Congress intended for the phrase "official capacity" to be given broad meaning. None of the authorities cited by Plaintiff has convinced this Court that the individual board members acted in such a way that § 15 U.S.C. § 35(a) is not applicable. This Court finds that there is no genuine issue of material fact as to whether or not the individual board members were acting in their "official capacity." Consequently the individual board members as well as the Defendant Memorial are entitled to summary judgment as to this issue.

■ Although the Defendants are entitled to summary judgment under § 15 U.S.C. § 35(a) that still does not dispose of the question of injunctive relief as well as costs and attorney fees under § 15 U.S.C. § 26. The parties have advised the Court that since this action was commenced, the Plaintiff Dr. Lanier has relocated to Florida and is engaged in the practice of nephrology in that state. That in all likelihood moots the ques-

tion of injunctive relief, but that question has not been briefed, and this Court does not see where that would moot the question of costs and attorney fees. This Court is not willing to grant summary judgment on an issue not briefed by the parties.

Further, effective March 7, 1994, Memorial Hospital consummated an agreement with South Mississippi Kidney Center, Inc., to transfer the chronic ESRD unit to South Mississippi Kidney Center, Inc. Therefore, Memorial Hospital no longer offers chronic ESRD services and thus Defendants assert that Dr. Martin's claims for injunctive relief regarding the right to provide these services at the hospital are moot. Plaintiff contends that his equitable claims are not moot because the nature of the transfer has not been determined; i.e., whether Memorial retained ownership and/or some other beneficial or financial interest in the ESRD units; whether some buy-back provision applies; and whether South Mississippi Kidney Center, Inc. should be added as a party. These and other questions concerning plaintiff's requested injunctive relief remain unanswered and cannot be appropriately resolved summarily on the record currently before the Court. *See Wicker v. Union County General Hospital, supra.*

### PLAINTIFF'S DUE PROCESS CLAIMS

The Plaintiff contends that the Defendants have deprived him of rights guaranteed by the Constitution in denying him due process in their denial of his performing chronic dialysis procedures at Memorial's chronic ESRD unit. He further contends that Memorial's exclusive contract with Dr. Lanier for chronic dialysis has deprived him of his medical staff privileges without notice or hearing and therefore without due process of law. Defendants contend that Dr. Martin's staff privileges at Memorial Hospital have in no way been reduced since they were originally granted. Dr. Martin contends that even though he may technically have staff privileges at Memorial he has been, practically speaking, deprived of the functional privileges necessary to the practice of nephrology which he was previously allowed to exercise. Dr. Martin contends that eighty percent of

chronic dialysis patients use an out-patient chronic ESRD facility such as those operated by Memorial. He says that without access to that facility he cannot practice his subspecialty of nephrology and has, at this point, ceased that part of his practice.

 Memorial Hospital as a local government entity is subject to 42 U.S.C. § 1983. *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611, (1978). "Section 1983 provides individuals with a private cause of action when constitutional deprivations occur under color of state law." *Todorov*, 921 F.2d at 1462. Memorial Hospital's exclusive contract with Dr. Lanier was the exercise of a power specifically authorized by the state; that is the execution and consummation of contractual relationships. Thus, Memorial Hospital was acting under color of state law.

 There are two essential elements to a claim under 42 U.S.C.A. § 1983 which are pointed out in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). "(1) Whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution and laws of the United States." 451 U.S. at 527, 101 S.Ct. at 1909, 68 L.Ed.2d at 428. Defendants have conceded that once a physician obtains medical staff privileges, those privileges may constitute a property right subject to due process protection if there is a contractual or statutory basis providing an entitlement to those privileges. This was clearly established in *Darlak v. Bobear*, 814 F.2d 1055 (5th Cir.1987), in which the court found that a physician's staff privileges constituted a property right where hospital regulations provided for a hearing prior to suspension or termination of staff privileges. " '[W]here medical staff privileges have been held to constitute an interest protected by the Fourteenth Amendment, it has been because there was an explicit or implicit agreement providing for no termination of the privileges without cause and a hearing, or because denial of staff privileges "might effectively foreclose ... practicing in the area because of harm to [a] professional reputation and be-

cause of a lack of other [comparable] facilities." ' " *Id.* at 1061 quoting *Daly v. Sprague*, 675 F.2d 716, 727 (5th Cir.1982). The Fifth Circuit also found medical staff privileges to constitute a property right where the medical staff bylaws allowed a termination of privileges only for cause in the case of *Northeast Georgia Radiological Associates, P.C. v. Tidwell*, 670 F.2d 507 (5th Cir.1982).

As to showing a protected property interest, the Eleventh Circuit in *Shahawy v. Harrison*, 778 F.2d 636 (11th Cir.1985), quoted *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) as follows: "Where termination of staff privileges [medical] has successfully invoked due process protection, the predicate has been the existence of an implied contract, or the existence of such severe injury to the plaintiff that he would be unable to practice in that area." 778 F.2d at 642–643.

In the case of *Christhilf v. Annapolis Emergency Hosp. Assoc., Inc.*, 496 F.2d 174 (4th Cir.1974), the court affirmed the district court's holding that Dr. Christhilf's hospital privileges could not be terminated without affording him procedural due process. This was based upon the premise "a denial of privileges might effectively foreclose Dr. Christhilf's practicing in the area because of the harm to his professional reputation and because of the lack of other facilities comparable to those at the hospital within twenty miles of Annapolis." *Id.* at 278.

The Fifth Circuit in *Shaw v. Hospital Authority of Cobb County*, 507 F.2d 625 (5th Cir.1975), explained "liberty" as follows:

Contemplated within this term is the right to practice any of the common occupations of life, and for others to engage the individual to perform those acts which are his occupation ... He is therefore entitled to a hearing conforming to minimal requirements of procedural due process of notice and an opportunity to be heard.

In *Adler v. Montefiore Hosp. Assoc. of Western Penn.*, 453 Pa. 60, 311 A.2d 634 (1973), the court said: "Under the guise of protecting the public interest the legislature may not interfere with private business or impose unusual and unnecessary restrictions

upon lawful occupations." (citations omitted) 311 A.2d at 640.

In *Shaw*, 507 F.2d at 628, the Court said:

Although both terms "liberty" and "property" are broad and not defined with exactness *National Ins. Co. v. Tidewater Co.*, 337 U.S. 582, 646, 69 S.Ct. 1173, 1209, 93 L.Ed. 1556, 1596 (1949), (Frankfurter, J., dissenting); *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, 1045, a number of cases have construed these terms. Liberty is not confined to mere freedom from bodily restraint but extends to the full range of conduct which the individual is free to pursue. *Bolling v. Sharpe*, 347 U.S. 497, 499–500, 74 S.Ct. 693, 694–695, 98 L.Ed. 884, 887 (1954). Contemplated within this term is the right to practice any of the common occupations of life, and for others to engage the individual to perform those acts which are his occupation. These rights are within the 14th Amendment. *Meyer v. Nebraska, supra*, 262 U.S. at 400, 43 S.Ct. at 627.

At this juncture this Court cannot conclude there is no genuine issue of material fact as to whether the action of Defendant Memorial in effect deprived Plaintiff of staff privileges which he had prior to March 1989, without a hearing. If the proof should establish that Plaintiff's access to the chronic ESRD units amounted to staff privileges prior to March 1989 and that he was effectively deprived of them by the Defendant Memorial in March of 1989 without a hearing, that would implicate Plaintiff's due process rights. Defendants' Motion for Summary Judgment on Plaintiff's constitutional claim of due process will be denied.

### QUALIFIED IMMUNITY AND PLAINTIFF'S DUE PROCESS CLAIMS

Qualified immunity protects government officials serving in a discretionary capacity from liability for actions undertaken in their official capacity. The purpose of the doctrine is to avoid 'distraction of officials from their governmental duties, inhibition of discretionary action and deterrence of able people from public service.'

*Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir.1987), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 816, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396, 409 (1982).

This doctrine allows state officials to carry out their duties free of fear that every decision might be tried before a court of law. To do otherwise, in the words of Learned Hand, would 'dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.'

*Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir.1986), quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2nd Cir.1949).

In *Harlow v. Fitzgerald*, one of the foremost cases on qualified immunity as it relates to constitutional issues, the United States Supreme Court held:

[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410.

 The Plaintiff has brought forward no evidence that would indicate to the Court that there is any genuine issue as to whether or not the individual board members were acting in their "official capacity." The issues involved in this case are not so clear cut as to demonstrate that the Defendants violated "clearly established" statutory or constitutional rights, of the Plaintiff. Thus, the individual Defendants are entitled to summary judgment under qualified immunity as to the constitutional due process claims of Plaintiff.

### STATE LAW CLAIMS

#### A. DEFENDANTS' WRONGFUL INTERFERENCE WITH CONTRACT

 "[W]rongful or malicious interference with the formation of a contract or the right to pursue a lawful business, calling, trade or occupation, generally constitutes a tort." *Protective Service Life Ins. Co. v.*

*Carter,* 445 So.2d 215, 216 (Miss.1983). In discussing the tort of wrongful interference with a contract, the court in *Liston v. Home Ins. Co.,* 659 F.Supp. 276 (S.D.Miss.1986), stated:

> The element of willfulness and calculation does not require a showing on the part of the plaintiff that defendant had a specific intent to deprive plaintiff of contractual rights. Rather, the requisite intent is inferred when defendant knows of the existence of a contract and does a wrongful act without legal or social justification that is certain or substantially certain will result in interference with the contract.

Plaintiff attempted to admit a patient to Defendant Memorial's chronic dialysis unit. Even after receiving written request from Plaintiff, Defendant Memorial refused Plaintiff's request. Plaintiff was thus prevented from fulfilling his doctor-patient responsibility to this patient. On these facts, this Court cannot conclude that there is no genuine issue of material fact as to whether or not Defendant Memorial tortiously interfered with Plaintiff's contractual relationship with this patient and other patients. Defendant is not entitled to summary judgment on Plaintiff's claim of wrongful interference with contract.

## B. STATE ANTI-TRUST CLAIMS

Miss.Code Ann. §§ 75–21–1 and 75–21–3 prohibit contracts which are "inimicable to the public welfare" and which "restrain trade."

The evidence in this case is abundantly clear that the interpretation of Defendant's agreement with Dr. Lanier resulted in a restraint of trade insofar as Dr. Martin's ability to practice nephrology in Harrison County. Based on the fact that there was a great need for nephrologists in Harrison County which was recognized by Defendant Memorial and the fact that action of Defendants for all practical purposes prevented Dr. Martin from being able to practice nephrology, this Court cannot conclude as a matter of law that there is no genuine issue of fact as to whether or not this was "inimicable to the public welfare." Consequently, Defendant is

not entitled to summary judgment on this issue.

## QUALIFIED IMMUNITY AS TO STATE LAW CLAIMS

The doctrine of qualified immunity as to the state law claims is not a great deal different than the doctrine of qualified immunity as it relates to the due process claims. However, the Mississippi cases have made a clear distinction as to acts which are discretionary and those acts which are ministerial. Ministerial acts are generally those as to which the office holder has no discretion—it is simply his duty to carry out the function. There is no immunity for ministerial duties. If a public official fails to carry out a duty that is required of him which is designated as ministerial, he has liability. However, if a public official in Mississippi is carrying out a duty which is discretionary, he has qualified immunity. Liability can be imposed on a public official for breach of duty only if "(1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the government actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the government actor commits an intentional tort." *Webb v. Jackson,* 583 So.2d 946, 949–950 (Miss.1991) (other citations omitted).

This Court concludes that there is no evidence before this Court that would justify a reasonable jury in concluding that the individual board members "substantially exceeded their authority" or that the individual defendants committed an "intentional tort." Certainly the action performed by the individual Defendants was not ministerial. Consequently, the individual Defendants are entitled to summary judgment on the issue of qualified immunity as to the state law claims.

## CONCLUSION

This Court has concluded that Plaintiff has demonstrated no conduct on the part of Defendants that is outside the bounds of reason to such an extent that the individual Defendants are deprived of their qualified immunity defenses, hence, this Court is comfortable in finding that there is no genuine issue of material facts as to the qualified immunity

defenses and the individual Defendants are entitled to summary judgment on these defenses. However, this Court cannot say as a matter of law that the defenses offered by the Defendant Memorial on the other issues are so clear cut that this Court can conclude that Plaintiff has demonstrated no genuine issue of material fact. Consequently, Defendant Memorial's Motion for Summary Judgment will be denied as to Plaintiff's claims under (1) the Sherman Anti–Trust Act insofar as it relates to injunctive relief, attorney's fees and court costs, (2) due process constitutional claims, (3) tortious interference with business, a state law claim, and (4) the state anti-trust claim. The individual Defendants' Motion for summary judgment as to the Sherman Act, insofar as it relates to injunctive relief, costs and attorney's fees will be denied. Plaintiff's claim as to injunctive relief may be moot by virtue of Plaintiff having relocated to Florida and in view of the transfer by Defendant of the ESRD units.

Plaintiff will forthwith submit a judgment as to the issues as to which Plaintiff prevailed. The individual Defendants will forthwith submit a dismissal with prejudice as to all claims, except the Sherman Anti–Trust claims relating to injunctive relief, court costs and attorney's fees.