**David D. DALY, M.D.,**
**Plaintiff-Appellant,**

v.

**Charles C. SPRAGUE, M.D., et al.,**
**Defendants-Appellees.**

No. 83–1594
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 1, 1984.

Rehearing and Rehearing En Banc
Denied Oct. 29, 1984.

Charles J. Winikates, David S. Curtis, Dallas, Tex., for plaintiff-appellant.

Jim Mattox, Atty. Gen., Philip Durst, Asst. Atty. Gen., Austin, Tex., for defendants-appellees.

Before BROWN, TATE and HIGGINBOTHAM, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

### Introduction

For a second time, we consider Dr. David Daly's claim that his First Amendment rights were violated by the temporary six day removal of his clinical privileges at the University of Texas Health Science Center.[1] Daly also claims that the District Court erred in dismissing his case without specifically ruling on—or granting—his

---

1. *Daly v. Sprague,* 675 F.2d 716 (5th Cir.1982), *cert. denied,* 460 U.S. 1047, 103 S.Ct. 1448, 75 L.Ed.2d 802 (1983).

post-remand motion for leave to file a supplemental complaint alleging a continuing conspiracy to destroy his professional standing and force his resignation. We affirm.

### Facts [2]

Dr. Daly, a tenured professor at the University of Texas Southwestern Medical School, filed this lawsuit on August 31, 1979, alleging two causes of action against his superiors at the medical school. He asserted that defendant-appellee suspended his clinical privileges at the medical school in violation of the Fourteenth Amendment. He also alleged that as a part of this suspension he was told that he could not communicate with his patients and that this order violated his First Amendment rights. Later he attempted to expand discovery to include events that had occurred after the date suit was filed to assert the theory that defendants were conspiring to wrongfully terminate his employment. This conspiracy claim was not contained in his original complaint and Daly's motion to expand the scope of discovery was denied.

Approximately two weeks prior to trial, Daly attempted to amend his complaint to include the conspiracy claim. On January 23, 1981 the District Judge denied his motion to amend and proceeded to decide the case on defendant's motion for summary judgment. The District Court determined that Daly had not proved the existence of a property interest and granted defendant's motion for summary judgment on April 30, 1981. Plaintiff appealed to this Court and in an opinion dated March 14, 1982, we affirmed the District Court's finding that plaintiff could not elevate his claim to the deprivation of a liberty or property interest protected by the Fourteenth Amendment. We also affirmed the District Court's denial of plaintiff's motion to amend since the denial was manifestly within the judge's discretion.

We determined, however, that the District Court failed to analyze the plaintiff's First Amendment claim and remanded the case only for a determination on that issue.[3] We also held that because plaintiff had not asserted a retaliation claim before the District Court, he could not do so on appeal.

On remand the First Amendment claim was considered by the District Court on a motion for summary judgment. On January 7, 1983, the plaintiff responded to defendant's motion for summary judgment on the First Amendment issue with yet another motion to supplement his complaint. Plaintiff's supplemental complaint sought to amend his original complaint by alleging that he was the victim of an ongoing conspiracy to deny him the right to pursue his remedies in the federal court. The District Court did not specifically address plaintiff's motion to amend to include a § 1985(2) claim and its judgment dismissed Daly's action in its entirety. It is from this order that plaintiff appeals.

### The Constitutionality of Regulations of Conduct That Have an Incidental Impact On Speech

■ It is beyond dispute that a state operated hospital has the right, and the duty, to regulate the conduct of its physicians. Limitations on professional conduct necessarily affect the use of language and association; accordingly, reasonable restraints on the practice of medicine and professional actions cannot be defeated by pointing to the fact that communication is involved. *Garcia v. Texas State Board of Medical Examiners*, 384 F.Supp. 434 (W.D. Tex.1974), aff'd. 421 U.S. 995, 95 S.Ct. 2391, 44 L.Ed.2d 663 (1975) held that "[t]here is no right to practice medicine which is not subordinate to the police power." In the first appeal of this case, both the District Court and this Court deter-

---

**2.** So that all who run may read, our opinion incorporates without repetition the detailed facts set forth in our earlier opinion giving rise to this controversy and the action of this and the District Court.

**3.** "The case is remanded for any necessary supplemental briefing as to the legal issues relating to this first amendment claim." *Daly,* note 1, at 730.

mined that no liberty or property interest was established by Daly because of the impermanent nature of the suspension and the fact that he was not foreclosed from private practice; additionally, the suspension in no way affected Daly's employment as a tenured professor.[4]

By withdrawing clinical privileges for a brief period at a state hospital, Daly's employer regulated only his professional conduct. The state has a legitimate interest, through continuing supervision, in maintaining the quality of medical care provided within its facilities. *Bigelow v. Virginia,* 421 U.S. 809, 827, 95 S.Ct. 2222, 2234, 44 L.Ed.2d 660, 664 (1975) (citation omitted). In short, as we earlier pointed out "[a] doctor has no constitutional right to practice medicine at a public hospital." *Daly v. Sprague,* 675 F.2d at 727, *citing Hayman v. Galveston,* 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714 (1927). Since the state undoubtedly possessed the power to regulate nonspeech and nonassociation aspects of Daly's professional actions, any incidental restrictions on his freedom of speech and association are not constitutionally invalid. *See Ohralik v. Ohio State Bar Association,* 436 U.S. 447, 457, 98 S.Ct. 1912, 1919, 56 L.Ed.2d 444, 454 (1978) (speech "essential but subordinate component" of activity which state had discretion to control).

"[T]he State has interest as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811, 817 (1968). Daly's intention to speak and associate with his patients at the medical center is clearly subsumed within and subservient to the regulation of medical practitioners in state hospitals. Any communication prevented by the removal of staff privileges relates only to that communication taking place at the center in conjunction with Daly's employment responsibilities as a physician. Daly was not forced to relinquish any First Amendment right he would enjoy as a private citizen. Only the state clinical privileges extended to him as a physician-employee of the medical center were affected for this brief time period.[5]

### Denial of Leave to Amend Complaint is Within the District Court's Discretion and Can be Shown by Implication from its Decision to Dismiss

Prior to his first appeal Daly unsuccessfully attempted to amend his complaint alleging appellees' continuing conspiracy to destroy his professional standing and force his resignation. Following remand, he sought to bring before the District Court a continuation of the same adverse activity through a motion for leave to file a supplemental complaint. He claimed under 42 U.S.C. § 1985(2) that appellees have undertaken a conspiracy to punish him for pursuing his remedies in the federal courts. The District Court did not specifically rule on Daly's motion to file this supplemental complaint, but its judgment directed that the plaintiff take nothing and that his action be dismissed.

We find that the District Court's granting of the defendant's motion for summary judgment was so inconsistent with the plaintiff's request for leave to amend as to

---

4. In fact, the suspension was for only 22 days and Daly's voluntary leave during this same period—due to his wife's illness—reduced the actual suspension of clinical privileges to less than a week. *See Daly,* note 1, at 721.

5. In *Board of Education v. Pico,* 457 U.S. 853, 863–64, 102 S.Ct. 2799, 2806–07, 73 L.Ed.2d 435, 444–45 (1982), the Supreme Court considered the unique environment of a school and a state's broad authority to regulate education. The Court held that there are substantial limits placed on the extent to which a school board's decisions may be restrained on First Amendment grounds. *Pico* further illustrates that courts should not intervene in the resolution of conflicts which arise in the daily operation of school systems unless basic constitutional values are directly and sharply implicated. The same considerations appear to apply to the university medical center in view of the state's extensive authority to regulate the practice of medicine.

implicitly deny his motion. In light of our determination that the District Court denied by necessary implication the plaintiff's motion to supplement, we need not direct our review to a determination of whether, as the plaintiff contends, the District Court erred in not ruling directly upon the motion.

■■■ Leave to amend pleadings shall be freely given when justice so requires. However, it is by no means automatic. *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir.1979), *cert. denied*, 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980). Thus, the decision to grant or to deny a motion for leave to amend lies within the sound discretion of the trial court. Here, we find no abuse of discretion in the District Court's failure to grant the plaintiff's motion for leave to supplement. As we view it, we are not faced with the application of the usual principles [6] on allowance of amended complaints. This is because this case was remanded on the specific and narrow grounds of the First Amendment claim. *See supra* note 3. We did not remand for a reconsideration of the whole controversy. We remanded solely for trial court decision on the First Amendment claim with further supplemental briefing and discovery as to the First Amendment claim. Nothing further was authorized.

■■■ Although it would have been tidier for the District Court to have separately and explicitly considered the motion for leave to supplement, on appeal it cannot be said that disposing of the motion by necessary implication is improper when the sup-

plemental pleading deals with events that occurred before the filing of the original pleading and in reality is only an amended pleading. *See* 6 Wright & Miller § 1510.

Further, Daly's supplemental filing is precluded by the law of the case doctrine since the proposed supplemental complaint was not within the scope of our very limited remand.[7]

The "law of the case" rule is based on the salutary and sound public policy that litigation should come to an end. It is predicated on the premise that "there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel the court to listen to criticisms on their opinions or speculate of changes from changes in its members," and that it would be impossible for an appellate court "to perform its duties satisfactorily and efficiently" and expeditiously "if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal" thereof.[8]

While the "law of the case" doctrine is not an inexorable command, a decision of a legal issue or issues by an appellate court establishes the "law of the case" and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless [i] the evidence on a subsequent trial was substantially different, [ii] controlling authority has since made a contrary decision of the law applicable to such issues, or [iii] the decision was clearly erroneous and would work a manifest injustice.

---

**6.** As this Court pointed out in *Daly v. Sprague*, 675 F.2d at 723, two criteria are employed to determine the appropriateness of a new pleading: (i) the timeliness of the amendment with regard to the progress of the case as a whole, and (ii) the germaneness of the subject matter of the amendment to the subject matter of the suit. A District Court's denial of a motion to amend is reviewed according to the abuse of discretion standard. *Barrett v. Independent Order of Foresters*, 625 F.2d 73, 75 (5th Cir.1980).

**7.** *See, supra, Daly*, note 1 at 723.

**8.** "An appellate court cannot efficiently perform its duty to provide expeditious justice to all 'if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal.' Not only does the doctrine promote judicial efficiency but it also discourages 'panel shopping' at the circuit level, for in today's climate it is most likely that a different panel will hear subsequent appeals." *Lehrman v. Gulf Oil Corporation*, 500 F.2d 659, 662 (5th Cir.1974), *cert. denied*, 420 U.S. 929, 95 S.Ct. 1128, 43 L.Ed.2d 400 (1975).

(Citations omitted). *White v. Murtha,* 377 F.2d 428, 431–32 (5th Cir.1967).

The doctrine does not reach questions which were not decided in the former proceeding, but does "comprehend things *decided by necessary implication* as well as those decided explicitly." *EEOC v. International Longshoremen's Ass'n,* 623 F.2d 1054, 1058 (5th Cir.1980), *cert. denied,* 451 U.S. 917, 101 S.Ct. 1997, 68 L.Ed.2d 310 (1981), *quoting Carpa, Inc. v. Ward Foods, Inc.,* 567 F.2d 1316, 1320 (5th Cir.1978), (emphasis in original), overruled on other grounds, *Cooper Liquor, Inc. v. Adolph Coors Co.,* 701 F.2d 542 (5th Cir.1983).

As a general rule if the issues were decided, either expressly or by necessary implication, those determinations of law will be binding on remand and on a subsequent appeal. *Lehrman,* 500 F.2d at 663 (5th Cir.1974).

Given the narrow nature of our mandate on remand—that only the First Amendment claim be reconsidered—the law of the case doctrine precludes this Court from considering plaintiff's supplemental complaint.

AFFIRMED.