UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-30317

_____

JOSEPH G. PASTOREK, II, M.D.,

*Plaintiff-Appellant*,

v.

MERVIN L. TRAIL, M.D.,ET AL,

*Defendants*,

MERVIN L. TRAIL, M.D., ALLEN COPPING, D.D.S., SUPERVISORS OF
LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL
COLLEGE,

*Defendants-Appellees*.

_____

No. 99-31146

_____

JOSEPH G. PASTOREK, II, M.D.,

*Plaintiff-Appellant*,

v.

MERVIN L. TRAIL, M.D.,ET AL,

*Defendants*,

CAROLYN ELKINS, SURVIVING SPOUSE AND EXECUTRIX OF THE ESTATE OF
THOMAS E. ELKINS, M.D,

*Defendant-Appellee*.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana,
New Orleans Division
(97-CV-3040-S)

_____

January 26, 2001
Before BARKSDALE AND BENAVIDES, Circuit Judges and VELA[1],
District Judge.

_____

[1]District Judge of the Southern District of Texas, sitting
by designation.

1

PER CURIAM:[2]

This case arises out of the termination of Dr. Joseph G. Pastorek ("appellant") from the Louisiana State University Medical School ("LSUMS"). Appellant was a tenured professor at LSUMS in the Obstetrics-Gynecology Department. He specialized in the treatment of high-risk pregnancies and, in addition to teaching at LSUMS, appellant performed consultations on patients referred to him by Dr. Annelle Blanchard ("Blanchard"), a local obstetrician. In February of 1995, the East Jefferson General Hospital held credentialing hearings to investigate allegations that Blanchard was harming obstetrics patients by over-utilizing high-risk procedures. Dr. Thomas E. Elkins ("Elkins"), chair of the Obstetrics-Gynecology Department and appellant's immediate supervisor, encouraged appellant to stop participating in and supporting Blanchard's practices, but he refused.

On March 29, 1995, Elkins sent a formal letter of complaint to LSUMS's chancellor, Dr. Mervin L. Trail ("Trail"). In the letter, Elkins recommended that Trail commence termination proceedings against appellant on the ground that appellant repeatedly refused to discontinue high-risk obstetric consultations.

---

[2]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

Trail informed appellant of the charges and provided him a copy of Elkins' complaint. Trail suspended appellant's obstetrics privileges but allowed him to continue teaching and practicing gynecology. Trail appointed an ad hoc committee to review the charges. This committee asked Dr. Gary Cunningham of the Southwestern Medical Center to conduct an independent review. Dr. Cunningham concluded that appellant engaged in "very questionable obstetrical practices." Based on Dr. Cunningham's conclusion, the committee recommended further investigation. Trail requested an independent review by the American College of Obstetricians and Gynecologists ("ACOG"). The ACOG found that, of the nineteen consultations it reviewed, sixteen were unsatisfactory because of inadequate documentation and two clearly fell below the standard of care required of a physician. Following the ACOG's review, Trail terminated appellant's employment. Appellant appealed this decision to the Dean of LSUMS, the LSUMS Standing Appeals Committee, and the President of Louisiana State University. He lost each appeal but claims that the hearings were biased against him. The LSU Board of Supervisors("LSU Board") ratified the decision to terminate on August 22, 1997.

Appellant filed suit under 42 U.S.C. §§ 1983 and 1985 against the LSU Board, Trail and President Copping in their official capacities, Trail in his individual capacity and Elkins

3

in his individual capacity. Appellant seeks damages and injunctive relief for violations of his due process rights under the Fourteenth Amendment and his speech and association rights under the First and Fourteenth Amendments. The district court granted summary judgment in favor of the LSU Board and Chancellor Trail and President Copping in their official capacities based on Eleventh Amendment sovereign immunity. It granted summary judgment in favor of Trail and Elkins in their individual capacities based on qualified immunity. Appellant challenges these grants of summary judgment.

## I.

This Court reviews a grant of summary judgment *de novo*, applying the same standard of review as the district court. *See Merritt-Campbell, Inc. v. RXP Products, Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Summary judgment is appropriate where there is not a genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See id.* This Court makes all inferences and resolves all factual disputes in favor of the non-movant. *See id.*

## II.

The district court held that the Eleventh Amendment bars appellant's claims against the LSU Board. Appellant contends that Eleventh Amendment immunity does not extend to state agencies like the LSU Board. The Eleventh Amendment bars suits

4

in federal court by citizens of a state against their own state or another state. U.S. CONST. amend. XI; *Hans v. Louisiana*, 134 U.S. 1, 11, 10 S.Ct. 504, 505 (1890). Further, a plaintiff cannot avoid this sovereign immunity bar "by suing a state agency or arm of a State" where the State is the real party in interest. *Richardson v. Southern University*, 118 F.3d 450, 452 (5th Cir. 1997). This Court has recognized that "the majority of decisions concerning the Eleventh Amendment status of state universities have concluded the institutions were arms of the state" and immune from suit. *United Carolina Bank v. Board of Regents*, 665 F.2d 553, 557 (5th Cir. Unit A 1982).

Six factors guide the determination of whether a university board is immune from suit: (1) whether the state statutes and case law characterize the agency as an arm of the state; (2) the source of the funds for the agency; (3) the degree of local autonomy the agency enjoys; (4) whether the agency is concerned primarily with local, as opposed to state-wide problems; (5) whether the agency has authority to sue and be sued in its own name; and (6) whether the agency has the right to hold and use property. *See Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991); *Richardson*, 118 F.3d at 452. In *Richardson v. Southern University*, this Court determined that Southern University's Board of Supervisors was immune from suit under the Eleventh Amendment because Louisiana law characterized the

university as an "arm of the state," its funding comes from the state, its autonomy is limited, its concerns are state-wide, and the university must sue and be sued in the name of its Board of Supervisors. *Richardson*, 118 F.3d. at 454-56.

Similarly, LSU is a state agency, *see* La. R.S. 36:642(B), its funding comes from the state, *see id.* at 38:2436, its autonomy is limited, *see id.* at 17:453, its concern is the education of students across the state, and LSU cannot sue or be sued in its own name, *see id.* at 17:335(A)(1), (6), (8), and (9). Therefore, the LSU Board is an "arm of the state" that enjoys Eleventh Amendment immunity, and the district court's grant of summary judgment on this issue was proper.

## III.

The district court granted summary judgment in favor of Trail and Copping in their official capacities on the ground that the 11th Amendment bars appellant's suit. The Eleventh Amendment bars suit in federal court against state officials in their official capacities when "the State is the real substantial party in interest." *Ford Motor Co. v. Department of the Treasury*, 323 U.S. 459, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). The State is the real substantial party in interest where the judgment would be satisfied out of the state treasury. *See Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 188 (5th Cir. 1986). For example, in *Voisin's Oyster House, Inc. v. Guidry*, this Court

6

held that the Eleventh Amendment barred plaintiff's claim against the Secretary of the Louisiana Department of Wildlife and Fisheries in his official capacity because the judgment, under Louisiana law, would be satisfied out of the state treasury. *Id.*

As in *Voisin's Oyster House*, a judgment against Trail or President Copping in their official capacities must be paid out of the state treasury under Louisiana law. *See* La. Const. art. 12, § 10; La. R.S. 13:5109B(2). This fact makes Louisiana the "real substantial party in interest." *Guidry*, 799 F.2d at 188. Therefore, the Eleventh Amendment bars appellant's claims against Trail and Coping in their official capacities.

Furthermore, appellant's 1983 claims for monetary damages against Trail and Copping in their official capacities are barred for an additional and independent reason. Section 1983 authorizes suit against a "person" to remedy civil rights violations. *See* 42 U.S.C. § 1983. In *Will v. Michigan Department of State Police*, the Supreme Court held that a state employee acting in his or her official capacity is not a "person" within the meaning of that term under section 1983. 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (1989). Here, appellant's 1983 claim for money damages is against two state employees, Trail and Copping, in their official capacities. Therefore, summary judgment on Appellant's 1983 claims against Trail and Copping in

7

their official capacities was appropriate because they are not "persons" under section 1983. *See id.*

## IV.

Appellant contends that Trail and Elkins, in their individual capacities, violated his constitutional rights (1) to procedural due process, (2) to substantive due process, (3) to free speech, and (4) by conspiring to violate these rights. Trail and Elkins raised the defense of qualified immunity which shields government officials from individual liability for civil damages. *See Coleman v. Houston Ind. School Dist.*, 113 F.3d 528, 532 (5th Cir. 1997). A public official loses qualified immunity when (1) his actions violate a constitutional right, (2) that was *clearly established* at the time of the violation, and (3) his conduct was *objectively unreasonable*. Appellant's claims fail because neither Trail nor Elkins violated any of his clearly established constitutional rights.

## A.

Appellant argues that the termination proceedings did not afford him procedural due process. Specifically, appellant argues that Trail and Elkins did not give him notice of the "actual reasons" for his termination and that the termination hearing was biased.

Appellant alleges that he was denied due process because he did not have an opportunity to respond to "the reasons which

8

actually motivated Dr. Trail" to terminate him. In *Levitt v. University of Texas at El Paso*, this court articulated the due process protections to which a tenured professor is entitled. 759 F.2d 1224, 1228 (5th Cir. 1985). Included among these protections is the professor's right to "be advised of the cause for his termination in sufficient detail so as to enable him to show any error that may exist." *Id.* This notice requirement is satisfied when a professor receives "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495 (1985).

Prior to terminating appellant, Trail sent a letter informing him of the decision to institute termination proceedings. The letter informed appellant of the charges and requested a written response. These facts are not disputed. This procedure gave appellant notice of the charges and an opportunity to tell "his side of the story." Therefore, Appellant received the notice and opportunity to be heard that due process requires.

Appellant also argues that the hearing he received was biased because a lawyer participated as an advisor both in drafting the initial charge letter and in the subsequent hearings. Before being terminated, a tenured professor is

9

entitled to a hearing before a tribunal that possesses "an apparent impartiality toward the charges." *Levitt*, 759 F.2d at 1228. However, partiality is not established by the fact that someone participated in the hearing and in the initial investigation. *See Duke v. North Texas State University*, 469 F.2d 829, 834 (5th Cir. 1972). For example, in *Duke v. North Texas State University*, this Court rejected plaintiff's argument that the hearing was biased simply because some of those who sat on the panel also participated in the charging phase of the termination proceedings. *See id.* Similarly, appellant argues that the participation of an attorney in the charging and hearing phases of the termination proceedings made the hearing biased against him. Just as in *Duke*, such participation does not constitute partiality, particularly where, as here, the allegedly partial individual did not participate in the actual decision to terminate. Summary judgment against appellant on his procedural due process claims was appropriate.

B.

Appellant argues that Trail and Elkins violated his substantive due process rights by terminating him without cause. To succeed with a substantive due process claim, the public employee must show: (1) that he had a property interest in his employment and (2) that the employer's termination of that interest was arbitrary or capricious. *See State of Texas v.*

10

*Walker*, 142 F.3d 813, 819 (5th Cir. 1998). Neither the Supreme Court nor this Court has squarely decided the issue of whether faculty tenure is a property right. *See id.* Assuming it is, appellant's substantive due process claim nevertheless fails because neither Trail's nor Elkins' actions were arbitrary or capricious.

A public employer's termination of an employee does not violate substantive due process unless the determination "so lacked a basis in fact that their decision to terminate him was arbitrary or capricious, or taken without professional judgment." *Id.* The fact that reasonable minds could disagree on the propriety of the decision is insufficient to defeat a public official's qualified immunity. *See id.*

In this case, Dr. Gary Cunningham, a physician not associated with LSUMS, determined that appellant engaged in "questionable obstetrical practices." An independent review by the ACOG resulted in a finding that, in two cases, appellant's care fell below the standard required of a physician. The ACOG also found that appellant's performance was unsatisfactory in another sixteen cases because of inadequate medical record documentation. Appellant was provided a hearing, an opportunity to defend himself, and several appeals. Appellant may not agree with Dr. Cunningham's or the ACOG's findings, but it cannot be said that the decision to terminate him lacked a basis in fact.

11

Further, the extensive proceedings afforded appellant show that the decision to terminate him was not made arbitrarily or capriciously. Therefore, neither Trail nor Elkins violated appellant's substantive due process rights and summary judgment in their favor on this issue was appropriate.

C.

Appellant claims that Trail and Elkins violated his free speech rights under the First and Fourteenth Amendments. Appellant argues that Elkins violated his First Amendment rights by terminating him for supporting Blanchard and that Trail is also responsible for this violation as Elkins' supervisor.

The State's interest in regulating the speech of its employees is significantly different than its interest in regulating the speech of its citizens. *See Daly v. Sprague*, 742 F.2d 896, 898 (5th Cir. 1984). A state operated hospital "has the right, and the duty," to regulate the conduct of its physicians. *Id.* "Reasonable restraints on the practice of medicine and professional actions cannot be defeated by pointing to the fact that communication is involved." *Id.* Because the State possesses the power to regulate a doctor's non-speech and non-association activities, incidental restrictions are valid. For example, in *Daly v. Sprague*, a physician argued that his employer violated his First Amendment speech and association rights by prohibiting him from seeing his patients. *See id.* We

held that any restriction on his First Amendment rights was incidental to the valid and reasonable regulation of his conduct as a physician. *See id.*

Here, Elkins told appellant that he should not support Blanchard's substandard medical practices because it would harm appellant's and the hospital's reputations. Just as in *Daly*, Elkins' directive was a regulation of appellant's professional conduct, and any restriction on speech was incidental.

Appellant's only basis for holding Trail liable for violating his free speech rights is that Trail is responsible for Elkins' actions as his supervisor. As we have said, Elkins did not violate appellant's free speech rights, but, in any event, only the direct acts or omissions of government officials will give rise to individual liability under section 1983. *See Coleman v. Houston Independent School District*, 113 F.3d 528,534 (5th Cir. 1997). Liability under section 1983 cannot be predicated upon the vicarious liability doctrine of respondeat superior. *See id.* Since Trail's liability is predicated upon the doctrine of respondeat superior rather than upon his own acts or omissions, Trail is not liable under section 1983. Therefore, the district court's decision to grant summary judgment against appellant on his free speech claims was proper.

D.

Appellant contends that he was deprived of a liberty interest in his reputation because Elkins and LSUMS failed to provide him a name-clearing hearing. A public employer may deprive its employee of a liberty interest in his reputation where it terminates him under stigmatizing circumstances without giving the employee a name-clearing hearing. *See Arrington v. County of Dallas*, 970 F.2d 1441, 1447 (5th Cir. 1992). To successfully assert this claim, a plaintiff must allege that "he was a public employee, he was discharged, that stigmatizing charges were made against him in connection with the discharge, that the charges were false, that the charges were made public, that he requested a name-clearing hearing, and that the hearing was denied." Id. In *Arrington v. County of Dallas*, this Court affirmed summary judgment against the public employee because he failed to allege the publication element of the claim. *Id*. Similarly, appellant in the instant case has failed to allege that he ever requested a name-clearing hearing as required by *Arrington*. Therefore, summary judgment against appellant on this claim is appropriate.

E.

Appellant argues that his termination was the result of a larger conspiracy involving Trail and Elkins. A section 1983 plaintiff may assert conspiracy claims, but such a claim is not actionable without an underlying violation of section 1983. *See*

14

*Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990). Where defendants are entitled to qualified immunity, the underlying violation of section 1983 required to make out a conspiracy claim does not exist. *See id.* Since Trail and Elkins are entitled to qualified immunity, there is no violation of section 1983 upon which to base conspiracy liability.

CONCLUSION

The Eleventh Amendment bars suit against the LSU Board and Trail and Copping in their official capacities. Both Trail and Elkins are entitled to qualified immunity because they did not violate any of appellant's clearly established constitutional rights. In sum, all issues presented by appellant, including those not specifically addressed in this opinion, are without merit. Accordingly, we affirm the district court's grant of summary judgment against appellant.